IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:19cv151 |
| | ) | |
| 1.81 ACRES OF LAND OWNED BY | ) | |
| ROBERT M. JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
TO EXCLUDE EXPERT TESTIMONY OF JARED SCHWEITZER

Plaintiff Mountain Valley Pipeline, LLC ("MVP"), by counsel, submits this

memorandum in opposition to the motion to exclude the expert testimony of Jared L.

Schweitzer filed by defendants Robert M. Jones, et al. ("Landowners"), Dkt. No. 17.

I.    INTRODUCTION

MVP has disclosed real estate appraiser Jared L. Schweitzer as an expert in

this case.  His report is attached hereto as Exhibit 1.  In their motion, Landowners assert

that Mr. Schweitzer has appraised "easement rights acquired in other pipelines" and not

the rights taken by MVP.  Dkt. No. 17 at 2.  This is incorrect.  Mr. Schweitzer's report

describes the easements taken by MVP and determines the market value of the easements

and the damage to the remainder.  The report contains maps showing the locations and

sizes of the easements, photographs of the easement areas and aerial photographs

showing the location of the improvements.  Mr. Schweitzer did not appraise easements acquired for other pipelines.

Landowners criticize Mr. Schweitzer because at one point in his deposition he said he did not rely upon the complaint in determining what rights were being condemned.  Dkt. Nos. 17 at 2, and 17-2 at 8 of 63.  Later in his testimony, however, Mr. Schweitzer explained that he reviewed the maps showing the easements, and these maps are exhibits to the complaint.  Dkt. No. 17-2 at 27 of 63.  As the Court is aware, the exhibit maps show the location of the easements and the acres for all temporary and permanent easements.  In addition, Mr. Schweitzer reviewed the Pipeline Design Engineering documents for the two Jones tracts.  Dkt. No. 17-2 at 13 of 63.  These documents form the basis for the amended complaint and specifically define the uses that are permitted and prohibited.  Dkt. No. 1256 in Case No. 7:17-cv-492-EKD.  Mr. Schweitzer also personally inspected the tracts and saw the easements in place.  Dkt. No. 17-2 at 3, 6-7, 11, and 28 of 63.  Given these facts, which are not mentioned by Landowners in their motion, it is not accurate—or fair—to say that Mr. Schweitzer did not consider the rights being condemned.

Landowners also contend that Mr. Schweitzer should not have relied upon a paired sale analysis prepared by another appraisal firm.  Dkt. No. 17 at 2-4.  This is also incorrect.  Mr. Schweitzer is entitled to rely upon the study because it is "the kind facts or data" that experts in the appraisal field reasonably rely upon.  Fed. R. Evid. 703.  The

paired sale study is exactly the type of material that experts can—and do—use to support their opinions.

## II.  MR. SCHWEITZER'S REPORT AND DEPOSITION TESTIMONY

Mr. Schweitzer's report describes the easements taken by MVP and gives the acreage of the easements.  Exhibit 1 at 6, 54-55, 58-59.  The report includes exhibit maps from the complaint showing the location and size of the easements and photographs of the easement area taken by Mr. Schweitzer.  *Id*. at 50-53; Dkt. No. 17-2 at 27-28 of 63. In forming his opinions, Mr. Schweitzer also considered the specifications for crossing the pipeline and the location of the improvements in relation to the easements.  Dkt. No. 17-2 at 13, 28 of 63; Dkt. No. 1256 in Case No. 7:17-cv-492-EKD (amended complaint with specifications for pipeline crossings for Landowners).

Mr. Schweitzer determined that the market value of the permanent easement is 90% of the pre-take value of the land subject to the easement.  Exhibit 1 at 2, 54-55; Dkt. No. 17-2 at 8 of 63.  Mr. Schweitzer relies upon studies cited in his report and his own experience as an appraiser.  *Id*.

Mr. Schweitzer determined the market value of the temporary easement based on the rental value of the land subject to the easement for the expected duration of the easement.  Exhibit 1 at 58-59.

Mr. Schweitzer determined that the remaining property is damaged by 15% of its pre-take value.  Exhibit 1 at 56; Dkt. No. 17-2 at 15 of 63.  As stated in his report,

Mr. Schweitzer considered a paired-sales study by Myers & Woods Appraisal Group, Inc. ("Myers & Woods") in December 2016.[1] Exhibit 1 at 56; Declaration of Wesley D. Woods, attached hereto as Exhibit 2. A paired-sales analysis is a method that appraisers use to measure severance damages. The goal of a paired-sales analysis is to isolate the effect that a certain feature, such as a natural gas pipeline, has on a property's market value. As Mr. Schweitzer explained in his report, the Myers & Woods study includes thirteen paired-sales involving natural gas pipeline easements in Virginia. The sales show a 0% to 17% diminution in value. Exhibit 1 at 56; Exhibit 2.

III.     ARGUMENT

A.     *Mr. Schweitzer Appraised the Easements Taken By MVP*

Landowners incorrectly assert that Mr. Schweitzer did not appraise the easements taken by MVP. Dkt. No. 17 at 2. In fact, Mr. Schweitzer's report describes the easements and includes maps showing the locations and sizes of the easements and photographs of the easement areas. Exhibit 1 at 50-54; Dkt. No. 17-2 at 27-28 of 63. In forming his opinions, Mr. Schweitzer reviewed the specifications for crossing the pipeline and noted the location of the improvements in relation to the easements. Dkt. No. 17-2 at 13-14, and 28 of 63.

The fact that Mr. Schweitzer also considered market studies involving other pipelines does not mean that he failed to appraise the easements in this case. Rather,

---

1. MVP produced the study on March 27, 2019, with its original responses to Landowners' requests for production.

based on the studies and his own experience, Mr. Schweitzer determined that the land within a permanent easement is damaged by 90%. Exhibit 1 at 54-55; Dkt. No. 17-2 at 8 of 63. By comparison, Landowners' appraiser, L. Steven Noble, finds 95% damage.

Contrary to Landowners' assertion, Mr. Schweitzer determined the market value of the temporary easement based entirely on rental value for this property, without any reference to other pipeline projects. Exhibit 1 at 58-59.

> B. *Mr. Schweitzer Properly Considered the Myers & Woods Study in Forming His Opinions*

Landowners contend that Mr. Schweitzer cannot testify about damage to the remainder because he used the Myers & Woods study in forming his opinion. Dkt. No. 17 at 2-4. Landowners ignore the controlling language in Rule 703, which provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 703; *see also United States v. Blackledge*, 714 F. App'x 247, 250 (4th Cir. 2018) (allowing expert to rely upon study by another expert); *RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc.*, 609 F. App'x 731, 739 (4th Cir. 2015) (holding trial court did not abuse its discretion in admitting expert testimony because Rule 703 allowed expert to rely upon information provided by others in forming his opinion of damages); *Whitaker v. Hyundai Motor Co.*, No. 7:17-cv-00055, 2019 WL 545001, at *1 (W.D. Va. Jan. 31, 2019) (allowing expert to rely upon work of non-

testifying expert); *Wilhelm v. Ameristep Corp.*, No. 7:15-cv-00362, 2018 WL 6272911, at

*6 (W.D. Va. Nov. 30, 2018) (refusing to exclude expert testimony simply because it is

based on or incorporates portions of report of another expert).

   The paired-sales study by Myers & Woods is the kind of facts and data

reasonably relied upon by experts in the appraisal field in forming opinions on value.

Declaration of Jared L. Schweitzer, MAI, ¶ 2, attached as Exhibit 3; *see Atlantic Coast*

*Pipeline, LLC v. 0.07 Acre*, No. 3:18-cv-00006, 2019 WL 2527571, at *14 (W.D. Va.

June 19, 2019) (noting paired-sales analysis "is one of the most commonly used and

reliable methods of estimating damages").

   In forming his opinions, Mr. Schweitzer spoke with Wesley Woods, a

principal of Myers & Woods, about the study. Exhibit 3, ¶ 3; Dkt. No. 17-2 at 20 of 63.

Mr. Woods is a Virginia-certified general real estate appraiser and a MAI designated

member of the Appraisal Institute. Exhibit 3, ¶ 3. Mr. Schweitzer is familiar with the

appraisal work of Mr. Woods and knows him to be a competent appraiser. *Id*. Mr.

Schweitzer reviewed the paired-sales study and concluded that it is reliable. *Id*. Contrary

to Landowners' assertion, Mr. Schweitzer was not required to personally verify the data

in the Myers & Woods study. *Sabal Trail Transmission, LLC v. 0.589 Acre*, No. 3:16-cv-

277, 2018 WL 3655556, at *5-6 (M.D. Fla. Aug. 2, 2018) (rejecting argument that

expert's opinion should be excluded because he did not independently verify paired-

sales); *see Uniform Standards of Professional Appraisal Practice*, Comment to Standards

Rule 2-3 at 25 (2018-2019) (explaining appraiser may rely on the work of other

appraisers as long as the appraiser has a reasonable basis for believing the individual performing the work is competent and has no reason to doubt the work is credible). In their motion, Landowners have not identified a single error or deficiency in the Myers & Woods study.

Rule 703 further provides that—even if otherwise inadmissible—facts and data considered by an expert may be disclosed to a jury if their probative value in helping the jury evaluate the expert's opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703. Mr. Schweitzer should be permitted to describe and explain the study to assist the jury in evaluating his opinion. *Blackledge*, 714 F. App'x at 250 (concluding that, under Rule 703, the trial court could consider a study that was referenced in the testifying expert's report and in his testimony); *Wilhelm*, 2018 WL 6272911, at *6 (allowing testifying expert to rely upon and discuss data and supported opinions from another expert's report). The Myers & Woods study has substantial probative value and will have no prejudicial effect.

IV.    CONCLUSION

For the foregoing reasons, Landowners' motion should be denied, and Mr. Schweitzer should be permitted to testify in accordance with his report and deposition.

Respectfully submitted,

MOUNTAIN VALLEY PIPELINE, LLC

By Counsel

Wade W. Massie
 VSB No. 16616
Seth M. Land
 VSB No. 75101
PENN, STUART & ESKRIDGE
P. O. Box 2288
Abingdon, VA  24212
Telephone:  276-628-5151
Facsimile:  276-628-5621
wmassie@pennstuart.com
sland@pennstuart.com

By  */s/ Seth M. Land*
        Seth M. Land

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 3rd day of July, 2019, the foregoing document

was electronically filed with the Clerk of the Court using the CM/ECF system, which will

send notification of such filing to counsel of record.

  */s/ Seth M. Land*
        Seth M. Land