IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:19-cv-00151 |
| ) | |
| 1.81 ACRES OF LAND OWNED BY ) | By: Elizabeth K. Dillon |
| ROBERT M. JONES, et al., ) | United States District Judge |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. It commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire a permanent easement and temporary easements on numerous properties, including this property located in Montgomery County, Virginia, and owned by Robert and Donna Jones (collectively, Landowners). On March 8, 2018, the court entered an order in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, 7:17-cv-492 (W.D. Va.) (Dkt. No. 716), granting MVP immediate possession of the easements on this property. A trial on just compensation for the takings on the Jones's property is scheduled to begin on August 28, 2019.

MVP moves to exclude from the upcoming trial the testimony of several of Landowners' experts, Paul Rubin, Steven Noble, and Amy Hudson. It also seeks to exclude or limit testimony of Donna Jones regarding the value of the property and has filed a motion in limine seeking to limit testimony regarding: 1) any pipeline danger / safety issues; 2) other pipeline accidents; 3) appraisals of other properties; 4) settlement offers; 5) amounts of compensation paid to others;

and 6) alleged damages from construction. Landowners seek to exclude the testimony of MVP's expert Jared Schweitzer. These matters have been fully briefed and were argued at a hearing. During the hearing, the Landowners agreed that Ms. Jones would not testify regarding the value of the land, but she would just rely on the value opinion of her appraiser. Thus, that motion to exclude Ms. Jones (Dkt. No. 14) will be dismissed as moot. With regard to MVP's motion in limine, defendants agree that they will not offer evidence regarding other pipeline accidents, appraisals of other properties (except for impeachment purposes), and they will not offer evidence of settlement offers or evidence of amounts of compensation paid to others. Thus, those portions of MVP's motion in limine will be dismissed as moot. Of course, the court may revisit these rulings at trial, depending on the evidence elicited and the context in which the evidence is offered.

For the reasons set forth below, the court will grant MVP's motions to exclude the testimony of Rubin, Noble, and Hudson. The court will also grant MVP's motion in limine regarding pipeline danger / safety issues and dismiss the remaining issues in the motion in limine as moot. Finally, the court will deny the Landowners' motion to exclude Schweitzer's testimony.

I. DISCUSSION

**A. Legal Standard**

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance. Legal standards regarding the same are set forth herein.

**1. Just compensation for partial permanent takings, including severance damages**

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). When the government condemns private property for a public purpose, it must pay just compensation for that property. Just compensation is the monetary equivalent of the property taken, and the federal courts have employed the concept of "fair market value" to determine the condemnee's loss. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings. *United States v. Miller*, 317 U.S. 369, 379–80 (1942). *See also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act). The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder." *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)). Moreover, "value [of the condemned land] is to be ascertained as of the date of taking." *Miller*, 317 U.S. at 374.

In *West Virginia Pulp and Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The

court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104. *See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

**2. Damages for perceived market negative influences**

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *Mountain Valley Pipeline, LLC v. 1.23 Acres of Land Owned by Eagle's Nest Ministries, Inc.*, Civil Action No. 7:18-cv-00610 (W.D. Va.) (7/12/19 Mem. Op. and Order, Dkt. No. 55), and *Mountain Valley Pipeline, Inc. v. 6.50 Acres of Land Owned by Sizemore Incorporated of Virginia*, Civil Action No. 7:18-cv-00612 (W.D. Va.) (7/12/19 Mem. Op. and Order, Dkt. No. 66). The court will not repeat that entire analysis here, but merely incorporates it by reference. By way of summary, the court held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace. *760.807 Acres of Land*, 731 F.2d at 1448. *See*

4

also *Atlantic Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

### 3. Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should only occur where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878

F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. General Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Maryland Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if,

assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Maryland Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres Of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

**B. MVP's Motion to Exclude Testimony by Paul Rubin**

MVP moves to exclude the testimony of Rubin, a hydrologist and cartographer. (Dkt. No. 10.) MVP challenges his opinions under Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). MVP notes that he is not an expert on pipelines, on pipeline safety, on real estate, or real estate value. Landowners assert that he is allowed to rely on reports of others and that Rubin is merely testifying to safety zones and placement of homes. Landowners asserted at the hearing that Rubin was hired to assess whether it was safe to live close to the pipeline.

A review of Rubin's report shows that it provides "comments and graphics regarding potential destruction of your home in the event of catastrophic failure of the Mountain Valley Pipeline . . . ." (Dkt. No. 11-1, page 2 of 50.) He attaches a graph of pipeline incidents prepared by someone else and graphics of blast impact zones prepared by structural and thermomechanical engineers regarding a Lancaster County, Pennsylvania, pipeline. Based on

7

this work, he then prepared his own graphics regarding blast impact zones for MVP's pipeline. He states that he would never purchase a home in such an area for any price. He discusses the causes of pipeline failures, provides examples of the same, and discusses the consequences of such failures. He references studies regarding blast impact assessments. He opines that many people are not aware of the risks and erroneously believe FERC would not put the public at risk.[1] Essentially, his opinions concern pipeline safety in terms of distance from the pipeline.[2]

The court first assesses whether Rubin is qualified to testify to the opinions in his report. He is not. Rubin is admittedly not a pipeline or pipeline safety expert. (Dkt. No. 11-1 at 38.) He is also not an engineer of any kind. (*Id.*) While experts are permitted to rely on studies and treatises typically relied upon by experts in their field of expertise, a party cannot turn an expert in another field into an expert in an area where he has no experience by propping him up entirely on the works of others. Moreover, even if he were an expert in pipeline safety, Landowners' experts fail to demonstrate that any safety risk is reasonably probable and more than speculative or that a nexus exists between any safety issues and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. For these reasons, MVP's motion to exclude Rubin is GRANTED.

## C. MVP'S Motion to Exclude Testimony by Steven Noble

Steven Noble is a real estate appraiser who appraised the Landowners' property at their request. All parties appear to agree that Noble is an experienced appraiser and is qualified as an expert. MVP seeks to exclude his testimony in three areas: 1) an explosion area and his opinion

---

[1] This testimony would appear to show that there is no public perception of pipeline danger.

[2] At some point in the hearing, Landowners minimized Rubin's likely testimony and diminished it to the point of merely providing a map of the Potential Impact Radius (PIR) defined in CFR which is part of a formula to calculate a High Consequence Area (HCA). The report and deposition testimony clearly show the opinions are not so limited.

that the property is materially less marketable because of this area; 2) easements provide access to trespassers making the property less desirable; and 3) inclusion of additional damages in the amount of 8% for loss of marketability. Because Noble based his opinion regarding diminution in value on these three factors, MVP argues that any diminution in value opinion should also be excluded. Landowners assert that Noble can consider the proximity of the pipeline because it affects the buyer's perception of safety and he looked at properties nearby with detrimental conditions regarding value. With regard to trespassing, Landowners contend that they are not seeking specific damages regarding trespass, but they believe it is one factor in consideration of diminution in value because trespassers can more easily access the property. Finally, they argue that the 8% adjustment was included using industry standards of comparable sales and economies of scale. In doing so, he allegedly used MVP's construction timeline and an after-market analysis.

1. **Explosion area and marketability**

As this court recently held in *Mountain Valley Pipeline, LLC v. 1.23 Acres of Land Owned by Eagle's Nest Ministries, Inc.*, Civil Action No. 7:18-cv-00610 (W.D. Va.) (7/12/19 Mem. Op. and Order, Dkt. No. 55), and *Mountain Valley Pipeline, Inc. v. 6.50 Acres of Land Owned by Sizemore Incorporated of Virginia*, Civil Action No. 7:18-cv-00612 (W.D. Va.) (7/12/19 Mem. Op. and Order, Dkt. No. 66), an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. Here, there is no evidence that any hazard is reasonably probable and there is no causal link between any hazard, or perception

9

thereof, and a diminution in value of the property. While proximity of a building to the pipeline may certainly be a factor reasonably considered by an appraiser in valuing property, and Noble's report properly considers that factor, Noble's report goes beyond proximity and opines regarding explosion areas and value in only conclusory language. There is no showing of risk, other than speculation, or of perception of risk in the marketplace for this property. Moreover, there is no connection made between an explosion area and a diminution in value. Indeed, it appears that the report is devoid of any facts or data with regard to risks of explosion, or explosion areas, and value. For these reasons, Noble will not be permitted to testify regarding the same.

**2. Trespass**

According to Landowners, one of the factors upon which Noble relies regarding value is that the property has or will have a fifty-foot wide cleared easement which will lead trespassers to cross the property. The possibility of unwanted and uninvited parties crossing the property is only briefly mentioned in Noble's report. (Dkt. No. 13-1, page 57 of 84.) He asserts, in his deposition, that persons will see this path from the road to Jefferson National Park and use it without permission for access or recreation. Landowners are not claiming damages for the tortious or criminal actions of trespassers, but they state that it is just one factor with regard to diminution in value. According to counsel, the appraiser is considering a change to the property – property that was once forested and private now has a large cleared area.

It is clear that Landowners cannot recover damages from MVP for the risk of tortious or criminal conduct by third parties, and no one disputes that. To the extent Noble's valuation is based upon this risk, it is not admissible. Noble's report, however, also notes the loss of view and the privacy that has now been rendered open to the cleared easement. MVP has not moved

to limit that testimony. To the extent that affects market value (and not just value to the individual landowner), it is entirely appropriate testimony.

### 3. Eight percent loss of marketability

Noble's report includes an 8% deduction for "Loss Marketability Of Homestead During & After Construction" that he adds on to the 38% market value reduction. (Dkt. No. 13-1, page 59 of 84.) He states, "With a homestead negatively affected as described in the After-Market Analysis, and the MVP project construction phase being some five years, and additional years before the physical image of the pipeline's construction is reduced, there is an additional discount for the subject improvements." (*Id.*) MVP objects to this testimony arguing that it is not supported by studies, research, or data. Landowners argue that it is supported by industry standards of comparable sales and economies of scale, as well as MVP's construction timeline and after-market analysis.

In his deposition testimony about this 8% diminution in value, he relies upon and adopts his testimony in the *Vest* case. (Dkt. No. 23-3, page 16 of 28.) The *Vest* case included a similar motion regarding the 8% diminution, but no party attached Noble's deposition testimony. It was not attached as an exhibit in this case either. In any event, deposition testimony does not cure a failure to explain an opinion in the report as required by Rule 26(a)(2)(B) or the failure to amend or supplement the report. It certainly appears that Noble is merely adding additional diminution in value during the construction phase, or until reclamation, which is temporary in nature.[3] He adds this to the diminution in market value at the time of the taking, which he calculated to be 38%. This additional diminution in value amount is not supported by the report or by any case law. For these reasons, the court will exclude this testimony.

---

[3] In *Vest*, it was clear that Noble arrived at a 2% per year figure based upon discussions with brokers and not based upon any studies or market data.

**D. Motion to Exclude Amy Hudson**

MVP has moved to exclude the testimony of Amy Hudson. (Dkt. No. 15.) Hudson is a real estate broker. Landowners offer her testimony with regard to the pipeline's substantial adverse impact on the utility and marketability of the property, specifically, her testimony that the property will stay on the market longer and buyers will request substantial discounts, if they are willing to see the property at all. Hudson's opinions are based upon conversations with numerous market participants, but she fails to identify them. At her deposition, she identified one purchaser who said he would not buy a pipeline property, one real estate agent who was concerned about water contamination, one farmer concerned about generator noise, and one developer who was concerned about property values. While she claimed she based the opinions on market research, none was identified other than a review of a map of the pipeline route and a determination that none of the properties along the route were on the market.

These anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony. Rule 702 requires sufficient facts or data to support any opinions, a showing that the testimony is the product of reliable principles and methods, and reliable application of the principles and methods. For these reasons, the court will GRANT MVP's motion to exclude.

**E. MVP's Motion in Limine**

MVP's motion in limine (Dkt. No. 16) seeks to limit testimony regarding: 1) any pipeline danger / safety issues; 2) other pipeline accidents; 3) appraisals of other properties; 4) settlement offers; 5) amounts of compensation paid to others; and 6) alleged damages from construction. Landowners agree that they will not offer evidence regarding other pipeline accidents, appraisals of other properties (except for impeachment purposes), and they will not offer evidence of

settlement offers or evidence of amounts of compensation paid to others. Thus, those portions of MVP's motion in limine will be dismissed as moot.

### 1. Pipeline danger / safety issues

The court has already determined that Rubin cannot testify regarding pipeline safety, that Hudson may not testify with regard to anecdotal conversations regarding pipeline safety, and that Noble cannot testify regard the explosion area. For all of these reasons and because there is no evidence of a reasonably probable hazard that is causally linked to a diminution in value of the property, the court will GRANT the motion as to pipeline danger / safety issues.

### 2. Damages from construction

It appears from the briefing that the parties may be in agreement with regard to the admissibility of damages from construction. MVP states the well-established law that damages from negligence in construction or operation of the pipeline is not compensable in the condemnation proceeding. Landowners agree with this premise. They merely argue that the clearing of the easement affects the seclusion of their property and will negatively affect the overall fair market value of the property. MVP does not seek to exclude that evidence. Instead, MVP references Noble's 8% additional diminution and Hudson's marketability opinion. The court has already addressed those matters. Thus, given apparent agreement by the parties, the court will dismiss this portion of the motion in limine as moot.

## F. Landowners' Motion to Exclude Jared Schweitzer

Landowners seek to exclude or limit in part the testimony of MVP's appraiser, Jared Schweitzer. (Dkt. No. 17.) They contend that he did not rely on sufficient facts and/or data because he did not appraise the specific easements acquired by MVP in that he admitted in his deposition that he did not rely on the actual easement language in the complaint. They point to

certain gaps in his knowledge about the easements during his deposition testimony. Also, he relied upon a Myers & Woods study instead of performing his own investigation, and neither Myers nor Woods were listed as experts and cannot be deposed or cross-examined so use of the study would be hearsay.

The deposition testimony of Schweitzer shows that he reviewed maps showing the easements, which were exhibits to the complaint and show the location of all easements, and he reviewed the Pipeline Design Engineering documents for the property. These documents define the uses that are permitted and prohibited. It is also clear that Schweitzer personally inspected the property. Moreover, Schweitzer considered the specification for crossing the pipeline and the location of the improvements in relation to the easements. His report and anticipated testimony meets the Rule 702 and *Daubert* requirements. Landowners are welcome to probe any gaps in knowledge during cross-examination of Schweitzer, but these gaps go to the weight of his testimony and not its admissibility.

In calculating the effect of the easements on the fair market value of the property, he relied upon a study prepared by Myers & Woods of thirteen paired-sales involving natural gas pipeline easements in Virginia. He references this study in his report. (Dkt. No. 21-1, page 58 of 68.) He did not conduct this study himself, but Rule 703 permits experts to "base an opinion on facts or data" of others "[i]f experts in the particular field would reasonably rely on those kinds of facts or data . . . ." Schweitzer states that appraisers rely on such studies and that he concluded that the study is reliable. Additionally, the law allows the expert to disclose facts and data upon which an expert relies if the probative value substantially outweighs any prejudicial effect.

For all of these reasons, Landowners' motion to exclude Schweitzer (Dkt. No. 17) will be

DENIED.

## II. CONCLUSION

For the reasons discussed herein:

1. MVP's Motion to Exclude Testimony by Paul A. Rubin (Dkt. No. 10) is **GRANTED**;

2. MVP's Motion to Exclude Testimony by L. Steven Noble (Dkt. No. 12) is **GRANTED**;

3. MVP's Motion to Exclude Testimony of Donna Jones regarding value (Dkt. No. 14) is **DISMISSED AS MOOT**;

4. MVP's Motion to Exclude Testimony of Amy E. Hudson (Dkt. No. 15) is **GRANTED**;

5. MVP's Motion in Limine (Dkt. No. 16) is **GRANTED** with respect to pipeline danger/safety issues. In all other respects, this motion is **DISMISSED AS MOOT**; and

6. Landowners' Motion to Exclude Testimony by Schweitzer (Dkt. No. 17) is **DENIED**.

Entered: August 21, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge